IN THE UNITED STATES BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| DIAL BUSINESS FORMS, INC., | ) | Case No.  97-44423 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| GENERAL ELECTRIC CAPITAL | ) | Adversary No.  01-4132 |
| CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DIAL BUSINESS FORMS, INC. and | ) | |
| PAUL SINCLAIR, as Trustee on behalf | ) | |
| of Class 3 Unsecured Creditors, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

General Electric Capital Corporation (GECC) filed this adversary proceeding in order to determine the priority of its lien, vis a vis the Class 3 Unsecured Creditors, on equipment owned by debtor Dial Business Forms, Inc. (Dial). GECC also seeks an injunction to enjoin Dial from selling its assets. This is a core proceeding under 28 U.S.C. § 157(b)(2)(K) over which the Court has jurisdiction pursuant to 28 U.S.C. § 1334(b), 157(a), and 157(b)(1).  The following constitutes my Findings of Fact and Conclusions of Law in accordance with Rule 52 of the Federal Rules of Civil Procedure as made applicable to this proceeding by Rule 7052 of the Federal Rules of Bankruptcy Procedure. For the reasons set forth below, I find that the Class 3 Unsecured Creditors' lien is subordinated to

the lien of GECC. I also find that Dial is in default to both the Class 3 Unsecured Creditors and GECC, therefore, the Class 3 Unsecured Creditors have a right to foreclose their interest as long as they satisfy the claim of GECC.

<u>FACTUAL BACKGROUND</u>

In 1995 Dial borrowed $1,197,185.60 from GECC, executed three promissory notes, and granted GECC a security interest in certain equipment as security for the loan. GECC duly perfected its security interest by filing UCC-1 financing statements in Missouri. On November 10, 1997, Dial filed a Chapter 11 bankruptcy petition. GECC filed a timely proof of claim asserting a secured claim in the amount of $1,130,370.30. On January 13, 1999, this Court confirmed Dial's Plan of Reorganization (the Plan). The Plan provided that GECC had an allowed secured claim in the amount of $1,000,000.00 to be repaid at ten percent interest amortized over 72 months. The Plan also provided that the principal balance is due and payable at the end of 48 months. More significantly, for these purposes, the Plan further provided that "[e]ach holder of an Allowed Secured Claim (that is, GECC) shall retian their security interests and liens in the property of the debtor."[1]

As to the Class 3 Unsecured Creditors, the Plan provided that they would receive distributions under the Plan, and that such distributions would be secured "by a subordinated interest in all of Dial's assets."[2] Also on January 13, 1999, Dial executed a

---

[1] Case No. 97-44423, Doc. # 207, The Plan at ¶ 3.2(f), pg. 7; Stipulation at ¶ 11.

[2] *Id.* at ¶ 3.3(E), pg. 8; Stipulation at ¶ 12.

2

promissory note in the face amount of $950,000, a security agreement, and UCC-1 financing statements in favor of Paul D. Sinclair as Trustee (the Trustee) pursuant to the Dial Class 3 Creditor Trust Agreement. On January 19, 1999, the Trustee duly perfected the security interest.

In July and August of 2000, the UCC-1 financing statements filed by GECC to perfect its security interest in the equipment lapsed, pursuant to Missouri's Revised Statute § 400.9-403(2), when GECC failed to file continuation statements.

Dial has made no distributions to the Class 3 Unsecured Creditors, and on June 1, 2001, the Trustee gave notice that he intended to foreclose the security interest granted them by the Plan by conducting a sale of all of Dial's assets. The Trustee contends that the lapse of GECC's financing statement elevates the Class 3 Unsecured Creditors to first priority position on the equipment, therefore, in a foreclosure sale the Trustee argues he would not be obligated to pay off the GECC lien.

On June 20, 2001, when Dial defaulted on its monthly payment obligation to GECC, GECC filed new UCC-1 financing statements to perfect its interest in the equipment. Dial has made no further payments to GECC.

On July 2, 2001, GECC filed a motion to reopen Dial's bankruptcy case in order for this Court to interpret the provisions of Dial's Plan regarding the priority of GECC's lien and the Class 3 Unsecured Creditors' lien. On July 16, 2001, this Court held a hearing, and on July 24, 2001, it granted GECC's motion to reopen the case. GECC then filed this

adversary proceeding to determine the priority of its lien and to ask this Court to enjoin the

Class 3 Unsecured Creditors' foreclosure sale. GECC and Dial agreed to submit this matter

on a Stipulation of Facts and Briefs. On January 11, 2001, at the parties' request, this Court

scheduled oral argument. At the oral argument the Trustee attempted to introduce Ron

Litton's affidavit. Ron Litton was the Co-Chairman of the Class 3 Unsecured Creditor's

Committee during the pendency of this Chapter 11 case. GECC objected to the affidavit

claiming it was not part of the stipulated facts, and not part of the record agreed upon by

the parties. Since the parties themselves agreed to this format, I will sustain GECC's

objection and find that the affidavit of Ron Litton is inadmissable.

DISCUSSION

Under Missouri's  version of Article 9 of the Uniform Commercial Code (the UCC)

in effect at the time this case was filed,  a properly filed financing statement perfects a

security interest in equipment for a period of five years:

> (2) Except as provided in subsection (7) of this section, a filed financing
> statement is effective for a period of five years from the date of filing.[3]

In order to perfect a security interest for five more years, a secured party must file a

continuation statement:

> The effectiveness of a filed financing statement lapses on the expiration of the

---

[3]Mo. Stat. Ann. §  400.9-403(2) (1994). Note that Missouri's version of Article 9 of the
UCC was substantially modified effective July 1, 2001. In this Memorandum Opinion, unless
otherwise specified, all references are to the version of the UCC in effect immediately prior to
July 30, 2001.

> five-year period, unless a continuation statement is filed prior to the lapse. .
> . Upon lapse, the security interest becomes unperfected, unless it is perfected
> without filing.[4]

Thus, under state law, upon the lapse of GECC's financing statements, its security interest became unperfected, at least as to subsequent purchasers. The issue here, however, is whether GECC's security interest, which remained attached to the equipment even though it became unperfected, retained its priority against the junior lien held by the Trustee.[5] The Trustee, after all, had full knowledge of the GECC lien and did not extend new credit to Dial based on the lapse of perfection.

The Court in *In re Chattanooga Choo Choo Company*,[6] stated that the original version of section 9-403 did not specifically say that a lapsed financing statement became unperfected as to other security interests perfected before the lapse.[7] Some early commentators looked to the purpose of filing requirements under the UCC to explain why a lapse did not apply to junior security interests. According to **White and Summers**, the purpose of a financing statement is to "put a credit-searcher on notice of the possible

---

[4]*Id.*

[5]*Id.* at 400.9-201, which states that "Except as otherwise provided by this chapter a security agreement is effective according to its terms between the parties, against purchasers of the collateral and against creditors."

[6]98 B.R. 792 (Bankr. E.D. Tenn. 1989).

[7]*Id.* at 799.

5

existence of a lien and indicate where to obtain further information."[8] Thus, any creditor

with actual knowledge of a prior lien did not rely on the filed financing statement for notice.

Nevertheless, when the drafters of the UCC amended Article 9 in 1972, they added a

sentence to section 9-403(2) that made it clear that a junior creditor who filed its financing

statement before the lapse will move up in priority, even though it had actual knowledge of

the prior lien:[9]

> If the security interest becomes unperfected upon lapse, it is deemed to have
> been unperfected as against a person who became a purchaser or lien creditor
> before the lapse.[10]

Thus, were section 400.9-403(2) of Missouri's Revised Statutes to control, the Class 7

Unsecured Creditors would hold a lien superior to the lien of GECC. I find, however, that

that section is not determinative. This case turns not on the priority of perfection, but on the

Trustee's prior agreement, as reflected in the Plan, to subordinate the  security interest of

the Class 3 Unsecured Creditors to that of GECC.

---

[8]*General Electric Credit Corp. v. Nardulli & Sons, Inc. (In re Nardulli & Sons, Inc.)*,
836 F.2d 184, 190 (3rd Cir. 1988) *citing* White & Summers, *Handbook of the Law Under the
Unifrom Commercial Code* 952 (2d ed. 1980).

[9]*In re Chattanooga Choo Choo Co.*, 98 B.R. at 799.

[10]Mo. Stat. Ann. § 400.9-403(2) (1994). In revised Article 9, effective July 1, 2001,
section 400.9-515 replaced section 400.9-403. Section 9-515(c) provides that, "[i]f a security
interest or agricultural lien becomes unperfected upon lapse, it is deemed never to have been
perfected as against a purchaser of the collateral for value." The Comment to this section clarifies
that a secured creditor is a purchaser and, thus, a creditor holding a junior interest would gain
priority in the event of a lapse. A judicial lien creditor, on the other hand, is not a purchaser, and
the perfected security interest would maintain priority as long as the financing statement was
effective on the date the judicial lien attached. Official Comment 2.

A confirmed plan of reorganization "'acts like a contract' that binds those parties that participate in the plan."[11] Moreover, the UCC recognizes that parties to a contract can alter the priority position each might otherwise enjoy:

> Nothing in this article prevents subordination by agreement by any person entitled to priority.[12]

The UCC Comment clarifies that only a party to an agreement can agree to subordination.[13] And the Plan is an agreement to which both GECC and the Class 3 Unsecured Creditors are parties. Dial's Second Amended Plan of Reorganization provides that GECC shall have a secured claim, in the amount of $1,000,000, and that GECC will retain its security interest in the equipment.[14] Further, the Plan provides that the Class 3 Unsecured Creditors will receive distributions secured by a subordinated interest in all of Dial's assets.[15] Both GECC and the Class 3 Unsecured Creditors participated in Dial's bankruptcy, and are, therefore, parties to the Plan. Thus, as between themselves, GECC and the Class 3 Unsecured Creditors agreed that the Class 3 Unsecured Creditors' security interest is subordinate to

---

[11]*United States v. Lincoln Sav. Bank (In re Commercial Millwright Serv. Corp.)*, 245 B.R. 603, 606 (N.D. Iowa 2000) (quoting *In re Varat Enterprises, Inc.* 81 F.3d 1310, 1317 (4th Cir. 1996)).

[12]Mo. Stat. Ann. § 400.9-316 (1994). Revised Article 9 provides that, "[t]his article does not preclude subordination by agreement by a person entitled to priority." Mo. Stat. Ann. § 400.9-339 (Supp. 2002).

[13]Mo. Stat. Ann. § 400.9-316 Uniform Commercial Code Comment.

[14]*Id.* at ¶ 3.2(f).

[15]*Id.* at ¶ 3.3(E).

7

the interest of GECC.

The Trustee argues that the Class 3 Unsecured Creditors' interest is not subordinated in the event of a lapse of GECC's financing statements, and that section 400.9-403(2) controls. I disagree. Section 400.9-403(2) would control as to any post-confirmation creditor to whom Dial granted a security interest, if that creditor filed a financing statement, because such a creditor did not participate in the Plan confirmation process. Or, if a new bankruptcy case had been filed while GECC's perfection had lapsed, a bankruptcy trustee, who is conclusively presumed not to have knowledge of unperfected security interests,[16] would not be obligated to honor such a security interest. Likewise, in another bankruptcy case filed while GECC's perfection had lapsed, the Plan would no longer control, and the Class 3 Unsecured Creditors' lien would then assume a priority position. But in this case the Trustee was aware that the same Plan that granted the Class 3 Unsecured Creditors a security interest in the first place, also provided that that security interest was subordinate to the interest of GECC. Thus, the Trustee agreed to subordinate the Class 3 Unsecured Creditors' claim to that of GECC, as permitted by section 400.9-316 of Missouri's Revised Statutes.

The Trustee relies on *In re Chattanooga Choo Choo Company*,[17] for the premise that a lapsed financing statement is ineffective against a financing statement filed before the

---

[16]11 U.S.C. § 544(a).

[17]98 B.R. 792 (Bankr. E.D. Tenn. 1989).

lapse.[18] The Court in *Chattanooga*, however, was not dealing with a confirmed plan of reorganization that contained subordination language. Instead, the Court decided a priority dispute in which two creditors held liens on debtor's personal property. On the date *Chattanooga* filed its Chapter 11 bankruptcy petition, Equitable's financing statement, which had perfected its interest in the personal property, had lapsed.[19] In the interim, American National Bank and First Tennessee Bank (the Banks) had acquired a security interest in the personal property by assignment from the Industrial Development Board. The Industrial Development Board had filed a financing statement to perfect its interest. At the time of the bankruptcy, Equitable's financing statement had lapsed, and those assigned to the Banks were still valid. The Court held that Tennessee's priority rules controlled, and those rules provided that only the Banks had a perfected security interest in the personal property on the date of the bankruptcy petition.[20] This holding is in keeping with that of *In re Nardulli & Sons, Inc.*[21] In that case, the Third Circuit held that creditors, who were perfected according to the requirements of the UCC on the date the bankruptcy petition was filed, held rights superior to the trustee as a hypothetical lien creditor, pursuant to section 544 of the Bankruptcy Code, even though the financing statements perfecting those interests

---

[18]*Id.* at 799.

[19]*Id.* at 798.

[20]*Id.*

[21]836 F.2d 184, 189 (3rd Cir. 1988).

lapsed while the case was pending.[22] The Court also held that the creditors did not have to

file continuation statements to maintain perfection as between the creditors and the debtor,

because it would not have served the purpose of putting future creditors and subsequent

purchasers on notice of their lien.[23] The Court also relied on section 1141 of the Code,

which provides that a confirmed plan controls the treatment of the debtor and all creditors

who participated in the plan process:

> (a) Except as provided in subsections (d)(2) and (d)(3) of this section, the
> provisions of a confirmed plan bind the debtor, . . . any entity acquiring
> property under the plan, and any creditor . . . whether or not the claim or
> interest of such creditor . . . has accepted the plan.[24]

The Plan, in this case, specifically  preserved GECC's security interest in the equipment

and created a subordinated secured interest for the Class 3 Unsecured Creditors in all of

Dial's assets. On the date of filing GECC's secured interest was perfected. As the Third

Circuit stated in *Nardulli & Sons, Inc.,* the failure to file continuation statements did not

divest that creditor of its perfected lien as against Nardulli, a participant in the plan process,

though it  would have divested priority over any subsequent creditors of Nardulli.[25] Though

this case is distinguishable from *Nardulli & Sons, Inc.* because this is a priority dispute

between two creditors, not the debtor and a creditor, I believe the Third Circuit's reasoning

---

[22]*Id.* at 189-90.

[23]*Id.* at 190.

[24]11 U.S.C. § 1141(a).

[25]836 F.2d at 190.

10

to be persuasive. Both GECC and the Class 3 Unsecured Creditors participated in the plan

confirmation process. This Court confirmed the Plan. The Plan is an agreement among all

the participants. As participants they agreed that GECC would have a secured interest, and

that the Class 3 Unsecured Creditors would have a secured interest subordinated to that of

GECC. Therefore, as between these participants, no perfection was necessary.[26] In *In re*

*Commercial Millwright Service Corporation*, a confirmed plan provided that a bank's

perfected lien had priority over the Internal Revenue Service's (the IRS) tax lien until the

bank's lien was paid in full. Post confirmation, the bank loaned the creditor additional funds

and did not file a new financing statement as to the post-confirmation loans. The debtor paid

the pre-petition loan in full prior to the case's conversion to Chapter 7. The IRS then filed

an adversary proceeding to determine the nature and priority of its lien. The bank argued

that its prior financing statement perfected it as to any subsequent advances. The Court

disagreed. It held that the confirmed plan granted the bank a lien prior to the lien of the IRS

only until the claim provided for in the plan was paid in full. After that claim was paid, the

IRS lien gained priority.[27] In other words, the Court in *Commercial* held that the confirmed

plan controlled, even if the bank would have obtained a different result under state law.[28]

---

[26]*United States of American v. Lincoln Sav. Bank, et al. (In re Commercial Millwright
Serv. Corp.)*, 245 B.R. 603, 606 (N.D. Iowa 2000) (Melloy, J.) (stating that the plan is a contract
that binds all the parties that participate).

[27]*Id.* at 607.

[28]*Id.* at 605.

11

That is no different from the situation in this case. According to the terms of the Plan, GECC holds a security interest in the equipment that is prior to the Class 3 Unsecured Creditor's subordinated interest. As to these two creditors, the Plan controls.

GECC asks this Court to enjoin the foreclosure sale. GECC also asks this Court to enter judgment as to the amount of its default. It is undisputed that Dial is in default as to both GECC and the Class 3 Unsecured Creditors. Other than GECC's representation, however, I have no evidence before me as to the amount of the default. Nor do I find persuasive GECC's reasons for enjoining the sale. GECC does not deny that the Class 3 Unsecured Creditors have received no payments under the Plan. They, therefore, have a right to foreclose their interest, as long as they satisfy first the lien of GECC before applying any proceeds to their claim.

An Order in accordance with this Memorandum Opinion will be entered this date.

/s/ Arthur B. Federman
Chief Bankruptcy Judge

Date: February 6, 2002

Copy to: Amy E. Mathews
         Amy E. Rush
         Paul D. Sinclair